UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAR PLUMBING CO., INC. AND CARDOZA CORP.,

                    Plaintiffs,

- against -

JAMES CAHILL, in his official capacity as an International Representative of the UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, and in his individual capacity, *et al.*,

                    Defendants.

Index No.   07 CIV 9722 (DAB)

---

ASPRO MECHANICAL CONTRACTING, INC., BLUEPRINT PLUMBING LLC, *et al.*,

                    Plaintiffs,

- against -

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, *et al.*,

                    Defendants.

Index No.   08 CIV 05612 (DAB)

---

**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFFS' MOTION TO CONSOLIDATE**

4818-6044-6466.3                      1

## INTRODUCTION

Plaintiffs Par Plumbing Co., Inc., Cardoza Corp., Aspro Mechanical Contracting, Inc., Blueprint Plumbing LLC, Crescent Contracting Corp., General Plumbing Corp., Louis L. Buttermark & Sons, Inc., Pace Plumbing Corp., Paramount Plumbing Company of N.Y., Inc., Parkview Plumbing & Heating Inc., Riehm Plumbing Corp., Taggart Associates Corp., V. C. Vitanza Sons, Inc. (hereinafter collectively "Plaintiffs") move this Court to consolidate the above-captioned actions 07 CIV 9722 ("Cahill/Riverdale Am. Compl.") and 08 CIV 05612 ("UA Am. Compl.").[1]

These related cases present common questions of law, substantially similar underlying, material facts and common "key witnesses"; their consolidation would clearly conserve the Court's resources, promote judicial efficiency and benefit all parties. Both actions are brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and the costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiffs in their business and property by reason of Defendants' violations, as alleged in the Cahill/Riverdale Amended Complaint and the UA Amended Complaint; Sections 1 and 2 of the Act of Congress of July 2, 1890, c. 647, 26 Stat. 209, as amended (15 U.S.C. §§ 1 and 2), commonly known as the Sherman Act; and to recover damages for Defendants' unlawful activity in violation of New York General Business Law §§ 340 et seq., commonly known as the Donnelly Act. To litigate these cases separately would cause an unnecessary waste of time and money; judicial efficiency and economy mandate that these cases be litigated together.

---

[1] Copies of the Cahill/Riverdale Amended Complaint and the UA Amended Complaint are attached as Exhibits A & B to the Declaration of Raymond G. McGuire, Esq. ("McGuire Decl.") dated August 22, 2008.

## STATEMENT OF THE CASE

Plaintiffs are privately held plumbing contractors, each incorporated under the laws of the State of New York, or qualified to do business in New York. (Cahill/Riverdale Am. Compl. ¶ 4; UA Am. Compl. ¶ 4.) Defendant James Cahill, one of the defendants in 07 CIV 9722, is the representative for New York of the defendant in 08 CIV 05612, the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("UA").[2] (Cahill/Riverdale Am. Compl. ¶ 5; UA Am. Compl. ¶ 6.) The UA is an international union whose constituent local unions represent and negotiate collective bargaining agreements on behalf of plumbers and pipefitters who have designated such local unions as their collective bargaining representatives. ("Cahill/Riverdale Am. Compl. ¶ 9; UA Am. Compl. ¶ 5.) The other defendants in the Cahill/Riverdale Amended Complaint are Defendant William Johnston ("Johnston"), a master plumber licensed by the City of New York, who, upon information and belief, is the president and chief executive officer of the other two defendants in the action, Defendant ASA ("ASA"), a plumbing contractor corporation organized under the laws of the State of New York, and Defendant Riverdale, a domestic limited-liability company organized under the laws of the State of Nevada which, on information and belief, is authorized to do business in New York as a plumbing contractor. (Cahill/Riverdale Am. Compl. ¶¶ 6-8; UA Am. Compl. ¶¶ 7-9.)

Both cases also involve two non-parties, Plumbers Union Local 1 ("Local 1"), a local affiliate of Defendant UA which represents and negotiates collective bargaining agreements in New York City on behalf of union plumbers, and the Association of Contracting Plumbers of the City of New York ("ACP"), a multi-employer bargaining

association representing the interests of approximately 60 union plumbing contractors performing plumbing work in New York City. (Cahill/Riverdale Am. Compl. ¶¶ 12-13; UA Am. Compl. ¶¶ 10-11.) Plaintiffs are ACP members. (Cahill/Riverdale Am. Compl. ¶ 13; UA Am. Compl. ¶ 11.)

A summary of the applicable facts, which are set forth in greater detail in the Cahill/Riverdale Amended Complaint and the UA Amended Complaint are as follows: The ACP and Local 1 negotiated several collective bargaining agreements which require plumbing contractors subject to their terms to pay specified wages and to make contributions to fringe benefit funds for journeymen and apprentice plumbers and helper plumbers. (Cahill/Riverdale Am. Compl. ¶¶ 14-19; UA Am. Compl. ¶¶ 12-21.)

The ACP and Local 1 have also set up a committee (the "Target Committee") which has the power to change certain contractual terms and conditions when contractors request lower labor costs to assist them in successfully biding for plumbing work against low wage, non-union competition on otherwise non-union projects. (Cahill/Riverdale Am. Compl. ¶¶ 20-21; UA Am. Compl. ¶¶ 22-23.) When the Target Committee authorizes relief from any contractual provisions, it communicates the decision to all plumbing contractors who are signators to the collective bargaining agreements with Local 1 (whether or not they are ACP members) before the bidding process is concluded so that all union plumbing contractors can submit competitive bids based upon the same terms. (Cahill/Riverdale Am. Compl. ¶ 21; UA Am. Compl. ¶ 23.)

The UA and the ACP have also executed several agreements designed to encourage ACP members to attempt to recover segments of the residential construction market that had been lost to non-union plumbing contractors which pay lower wages and provide fewer (or no) benefits, by allowing benefits and work rules that are more

advantageous for contractors than those under the Local 1 agreements. (Cahill/Riverdale Am. Compl. ¶¶ 22-25; UA Am. Compl. ¶¶ 24-27.) One of these agreements, known as the "Site Specific Agreement," has no published wages, benefits or work rules; they are decided on a case by case basis. (Cahill/Riverdale Am. Compl. ¶ 23; UA Am. Compl. ¶ 25.) Signatory contractors who wish to proceed under the Site Specific Agreement must request Cahill, the UA's representative, to agree to the proposed rates and working conditions. (Cahill/Riverdale Am. Compl. ¶ 25; UA Am. Compl. ¶ 27.)

Both cases revolve around the same core of underlying facts, which stem from a combination and conspiracy entered into by Defendants ASA, Riverdale and Johnston with Defendant UA, through Defendant Cahill, under which the UA, through Cahill, allowed Johnston, ASA and Riverdale to bid for and obtain at least three plumbing contracts on preferential terms that were not authorized in writing by any of the applicable collective bargaining agreements, not made available or revealed to other signatory plumbing contractors, including the Plaintiffs, nor disclosed to Local 1 or the ACP.[3] (Cahill/Riverdale Am. Compl. ¶¶ 26-38; UA Am. Compl. ¶¶ 28-42.) Defendants Johnston and ASA were able to submit successful bids on three projects (one of which was actually performed by Defendant Riverdale) in reliance on a secret agreement with Defendant UA, through Defendant Cahill, that allowed them to significantly reduce their overall labor costs and underbid other union plumbing contractors, including Plaintiffs,

---

[3] The three projects are (1) a project at 333 East 102nd Street in Manhattan, New York (the "Hampton Court Project") (Cahill/Riverdale Am. Compl. ¶¶ 26-29; UA Am. Compl. ¶¶ 28-31); (2) a 29 story residential structure at 164 Kent Avenue, in the Williamsburg section of Brooklyn, New York ("Kent Avenue") (Cahill/Riverdale Am. Compl. ¶¶ 30-35; UA Am. Compl. ¶¶ 32-37); and (3) a project at 40 West 116th Street, in Manhattan, New York ("W. 116th Street Project") (Cahill/Riverdale Am. Compl. ¶¶ 36-38; UA Am. Compl. ¶¶ 39-42).

who were in direct competition with them; this conspiracy constitutes an unfair restraint on trade. (Cahill/Riverdale Am. Compl. ¶¶ 39-43; UA Am. Compl. ¶¶ 43-47.)

There is no legitimate business reason that justifies a union providing special terms and conditions to certain contractors while excluding others. The conduct of Defendants constitutes a *per se* violation of § 1 of the Sherman Act and the Donnelly Act, §§ 340 *et seq.* of New York General Business Law. Alternatively, Defendants' conduct constitutes an unreasonable restraint of trade when measured against the "rule of reason."

## ARGUMENT

### I. CONSOLIDATION IS APPROPRIATE BECAUSE THESE CLAIMS ARE INTIMATELY RELATED AND CAN BE LITIGATED MORE EXPEDITIOUSLY AND LESS EXPENSIVELY AS ONE ACTION.

Consolidation is appropriate here because both actions arise out of the same common nucleus of facts, viz, the secret agreement between Johnston, ASA and Riverdale and the UA, through Cahill, that allowed Johnston and ASA to obtain preferential terms to successfully outbid Plaintiffs and other union plumbing contractors on at least three plumbing contracts. Thus, insofar as the Plaintiffs would be required to present evidence from each case at the trial of the other (if consolidation were not ordered) the Court would expend substantial resources conducting two trials at which much of the same testimony would be presented.

In addition, Johnston and Cahill, and possibly other UA officials, are key witnesses in each case and would have to be deposed and testify in both actions. Obviously, the duplicative testimony of defendants and the key witnesses in these cases is not in the best interests of the Court or the parties.

Fed. R. Civ. P. 42(a) permits the consolidation of all actions pending

before the court "involving a common question of law *or* fact." (Emphasis added). The purpose of this rule is to permit parties to avoid incurring the unnecessary costs or suffering the avoidable delays normally involved in separate trials of similar issues. *Johnson v. Celotex*, 899 F.2d 1281, 1284-85 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990).[4]

It is axiomatic that Courts have broad discretion to consolidate related actions and generally have taken the view that considerations of judicial economy favor consolidation. *Id.* Although the main factors in determining whether it is appropriate to consolidate two actions are whether common questions of law or fact exist (factors that are easily satisfied here), the Second Circuit has fashioned a balancing test to determine whether consolidation in a particular matter serves the interests of justice:

> whether the specific risks of prejudice and possible confusion [of a single consolidated trial are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* at 1285 (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11th Cir. 1985)). As the claims in both cases are virtually identical, there is not risk of "prejudice and possible confusion," and therefore no need for a fact-finder to have to parse out the facts pertaining to one action from the facts unique to the other, obviating the court's primary concern. *See, e.g., Johnson*, 899 F.2d at 1285.

Furthermore, unsubstantiated fears of prejudice or confusion, without specific examples are insufficient to defeat a motion for consolidation. *See Consorti v.*

---

[4] *See also* Guidelines for the Division of Business among District Judges, Eastern District, Rule 50.3(a) ("[a] case is 'related' to another for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge.").

4818-6044-6466.3         7

*Armstrong World Indus., Inc.*, 72 F.3d 1003, 1008 (2d Cir. 1995) (granting motion to consolidate and holding that risk of confusion or prejudice to a jury could be avoided where the district court used "intelligent management devices" such as thoughtful verdict forms and cautionary and limiting instructions), *vacated on other grounds*, 518 U.S. 1031 (1996).5 Indeed, the consolidation of these cases will not only serve the interests of judicial economy, but will benefit defendants because as they will not have to be deposed twice or testify at trial twice; consolidation will also limit the overall costs associated with defending these lawsuits.

Finally, the consolidation of these cases will greatly enhance the efficiency of discovery. *See District 65, UAW v. Harper & Row Publishers, Inc.*, 576 F. Supp. 1468, 1475 (S.D.N.Y. 1983) (consolidating ERISA actions brought by multiple plaintiffs against employer "in order to avoid duplication of discovery"). None of the parties has provided its initial disclosures or propounded written discovery requests and no depositions have been taken in either case. Since the two actions are at the same stage of discovery, discovery in the first action will not be unduly delayed by consolidation, and indeed, the fact that the discovery in the cases can be conducted together will ultimately save time and money and be advantageous to all parties and to the Court. *See Johnson*, 899 F.2d at 1284.

---

5 *See also Augustin v. Jablonsky*, 99-CV-3126, 2001 U.S. Dist. LEXIS 10276, at *48-52 (E.D.N.Y. 2001) (granting motion to consolidate on the grounds that "the Court sees no reason why any risk of confusion or prejudice could not be eliminated at trial with well-crafted jury instructions"); *Cruz v. Abbey, Inc.*, 778 F. Supp. 605, 613 (E.D.N.Y. 1991) (granting motion to consolidate on the grounds that "the Court discerns no prejudice inuring to the defendants"); *Fireman's Insurance Co. v. Keating*, 753 F. Supp. 1137, 1141 (S.D.N.Y. 1990) (granting motion to consolidate, stating, "[d]efendants have made no showing that delay, confusion or prejudice would result from the requested consolidation, and to the extent such problems become manifest at a later date, if ever, they may be rectified by the Court at such time.").

## CONCLUSION

As demonstrated herein, the two actions now before the Court involve the same interested parties, the same material facts, and the same causes of action and attendant legal issues. Plaintiffs respectfully request that the Court consolidate, for all purposes, including trial, civil action numbers 07 CIV 9722 and 08 CIV 05612.

Dated: New York, New York
     August 22, 2008

                        KAUFF McCLAIN & McGUIRE LLP

                        By: _____
                            Raymond G. McGuire
                            950 Third Avenue, 14th Floor
                            New York, New York 10022-2075
                            (212) 644-1010
                            *Counsel for Plaintiffs*